## 7447

### STATE v. BUTLER.

1. RAPE.—The evidence here affords a basis for the inference that the defendant entered the room of prosecutrix and assaulted her with intent to ravish.

2. CONSTITUTIONAL LAW.—The 26 Stat., 20, relating to punishment for assault with intent to ravish is not in violation of article III, section 17, of Constitution, in that the act relates to more than one subject not expressed in the title.

Before DANTZLER, J., Pickens, June, 1909. Affirmed.

Indictment against Haas Butler, defendant appeals from sentence.

*Mr. W. E. Finley,* for appellant, cites: *Intent is the essence of offense:* 32 Tex. Cr. R., 502; 14 Gray, 415; 86 N. C., 658. *Force an essential ingredient:* 63 Ga., 355; 31 Conn., 210; 12 Tex. App., 196; 2 Ency., 973; 32 Tex. Cr. R., 502; 14 Gray, 415; 86 N. C., 658; 80 Col., 306; 68 Ia., 391; 90 Ala.,

4—85

628; 63 Ga. 355; 31 Conn., 210; 12 Tex. App., 196; 12 Tex. App., 194.

*Solicitor P. A. Bonham,* contra.

February 22, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant was convicted of assaulting Artie Kay with intent to ravish her, and the Court thereafter imposed upon him the sentence of death as required by the Act of 1909.

Counsel for defendant earnestly contends that the Circuit Court should have directed a verdict of acquittal on the ground that there was no evidence that the assault, if any, was committed with intent to ravish; and that no other inference could be drawn from the evidence than that the defendant laid his hands on Artie Kay merely in solicitation.

The following is the evidence in chief of the witness, Artie Kay:

"Q. Do you know the defendant, Haas Butler? A. Yes, sir. Q. How long have you known him? A. Not until he come to our house. Q. When did he come to your house? A. In February. Q. Did he work at your father's house? A. Yes, sir. Q. You knew him quite well then? A. Yes, sir. Q. How many times had you seen him? A. I saw him every day. Q. You knew his voice? A. Yes, sir Q. And you knew his face. A. Yes, sir. Q. Did you see him on the night of the 28th of April? A. Yes, sir. Q. About what time did you see him? A. Between ten and eleven o'clock. Q. Were you asleep? A. Yes, sir; he waked me up. Q. Were the windows in your room closed? A. Yes, sir. Q. What did he do? A. He come in and put his hand over my mouth, and said, 'don't you know you are shut up in this room with me, and you can't get out,' and said he had something to tell me, and tried to kiss me. Q. He had

his hand over your mouth? A. Yes, sir; and his other hand was on my hands. Q. Did you try to get away from him? A. Yes, sir; I tried to hollow and got to coughing, and he ran away. I tried to turn away from him, and he would pull me back, and he said I was a mean girl, and he said I was shut up in the room with him and couldn't get out. Q. When you got to coughing what did he do? A. He went out of the window, and when I got through coughing I went and woke mother and father. Q. And the defendant said he had something he wanted to tell you? A. Yes, sir. Q. Did he rush out of the room? A. Yes, sir. Q. And then you communicated with your mother and father? A. Yes, sir. Q. Did you know who that was in your room that night by your bed with his hand over your mouth and holding you? A. Yes, sir. Q. Who was it? A. Haas Butler. Q. Do you recognize that man there as the man (referring to the defendant). A. Yes, sir; I know it was him. The moon was shining bright and I saw his face. Q. Did you recognize his voice? A. Yes, sir. Q. You have no doubt but what he is the man? A. No, sir; I know he is the man. Q. Did you see him any more that night? A. Yes, sir; I saw him when they arrested him. Q. Did they bring him to you to identify? A. No, sir. Q. You saw him that night? A. Yes, sir. Q. And you recognize Haas Butler as the man that was in your room that night? A. Yes, sir. Q. Did you see his face? A. Yes, sir. Q. In consequence of what you told your mother and father, they started an investigation and arrested this man that night. A. Yes, sir. Q. You went immediately to their room and told them, did you? A. Yes, sir. Q. What time of night was it? A. About eleven o'clock. Q. How long had you been in bed? A. About two hours. Q. About how long was it before he was arrested? A. About two hours, I reckon. Q. Were you very much frightened? A. Yes, sir."

It seems clear, without analysis, that this evidence affords a basis for the inference that the defendant entered the room of the woman and assaulted her with intent to ravish, and desisted on account of her strenuous resistance. The evidence is stronger than that which the Court held sufficient to sustain the verdict in the case of the *State* v. *Johnson,* 84 S. C., 45.

We can discern no foundation for the exception alleging the statute of 1909 (26 Stat. 20) to be in violation of article III, section 17, of the Constitution, and no argument was submitted on the exception.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed, and that the cause be remanded to that Court in order that a new day may be assigned for the execution of the sentence heretofore imposed.